[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This vigorously disputed dissolution action came to the court by a writ, summons and complaint of the plaintiff, CT Page 7606 Patricia Pearce returnable on September 17, 1991. The complaint alleging irretrievable breakdown of the marriage requested a dissolution, alimony and related relief. The defendant, Michael Pearce was served in hand on August 26, 1991. The defendant appeared by counsel on September 17, 1991 and thereafter filed an answer and cross complaint alleging irretrievable breakdown and requesting essentially the same relief. On October 28, 1991, pendente lite orders were entered in accordance with a stipulated agreement filed that day. The plaintiff was permitted exclusive use and possession of the marital residence at 155 Reutemann Road, North Stonington, Connecticut and was permitted to collect the rents and pay the mortgage taxes, maintenance and insurance on the rental property at 84 Lincoln Avenue, New London, Connecticut. In addition, the pendente lite orders provided that the plaintiff should provide the defendant with an accounting of all financial matters relevant to the rental property at 84 Lincoln Avenue, New London, Connecticut. Mutual restraining orders were entered at that time providing that neither party should harass the other personally or by telephone at the others home or business. The pendente lite orders also provided that the defendant would maintain medical insurance for the plaintiff so long as he maintain medical insurance for himself and further that the defendant would reimburse the plaintiff for any pre-paid medical expenses for which the insurance company reimburses him.
The case was claimed for the limited contested list on February 14, 1992.
Thereafter, on April 27, 1992 a court order was entered authorizing attorney for the plaintiff to withdraw her appearance. The plaintiff filed a pro se appearance on May 20, 1992 and thereafter throughout this proceeding has represented herself. The trial of the case took place over a two day period beginning on July 16, 1992 and continuing on July 31, 1992 at Norwich.
The parties proceeded on the defendant's cross complaint.
The defendant testified on his own behalf. In addition to her own testimony the plaintiff offered the testimony of seven other witnesses. Two of whom were children of a prior marriage, two of whom were ministers from her church. Two of the witnesses were acquainted with the plaintiff through her employment and one of the witnesses (Wendy Colbeth) did not know either the plaintiff or the defendant and had no information to offer relative to the case. CT Page 7607
The plaintiff offered forty-two exhibits including information relating to the contribution of the parties to the family assets and, the contribution of the parties to the family debts. The exhibits further demonstrate considerable obligations to the municipalities of North Stonington, New London and Waterford for taxes which are in arrears.
Both parties filed financial affidavits in connection with the trial pursuant to the rules of the court.
In the affidavits the parties demonstrate ownership of four parcels of real property as follows: 1) a house and lot at 155 Reutemann Road, North Stonington, Connecticut which the parties listed as having a value of $240,000.00; 2) an empty lot in North Stonington which the defendant values at $60,000.00; 3) a house and lot at 84 Lincoln Avenue, New London, Connecticut (apartment house) concerning which the parties differ on the value. The plaintiff values the apartment house at $140,000.00 with a $122,000.00 mortgage resulting in an equity of $18,000.00. The defendant estimates the value at $175,000.00 less a $122,000.00 mortgage leaving an equity of $53,000.00; 4) a house and lot at 116 Butlertown Road, Waterford, Connecticut concerning which the parties differ relating to its value and status. The defendant lists the property on his affidavit having a value of $80,000.00 subject to a $100,000.00 mortgage leaving a negative equity of $20,000.00. However, on July 31, 1992 the plaintiff's affidavit does not list that property and suggests a $47,000.00 debt owed after foreclosure.
Both financial affidavits of the parties reflect substantial liabilities. The plaintiff's affidavit of July 31, 1992 lists a total of liabilities at $143,782.39 while the defendant in his affidavit suggests the liabilities total $126,824.00. These liabilities are in addition to the mortgages which the parties acknowledge on the property at 84 Lincoln Avenue and 116 Butlertown Road.
From the evidence, and taking into consideration the factors set forth in Connecticut General Statutes46b-81 and 46b-82 the court makes the following findings:
The parties were married at Clinton, Connecticut on June 11, 1977. At that time the plaintiff had been previously married and had two minor children. The defendant had also been previously married. Both the plaintiff and the defendant have continuously lived in this state since that time. CT Page 7608
At the time of the marriage the plaintiff owned property at 131 Cow Hill Road, Clinton, Connecticut which came to her as a result of the division of assets at the conclusion of her first marriage. At that time the defendant, having recently filed bankruptcy had no substantial assets and no substantial liabilities. In 1978 the plaintiff sold the Clinton property (see Plaintiff's Exhibit 1) for $125,000.00 and these funds together with the $4,000.00 contribution from the defendant were used to purchase the 155 Reutemann Road property which stands in the name of the plaintiff only and is not now subject to a mortgage. In the early years of the marriage the defendant husband was employed variously as a auto salesman and a home improvement contractor. (see Plaintiff's Exhibit 42) The defendant's home improvement business was operated under the name of Alimo Builders which at some point during the course of the marriage was incorporated with the defendant being the sole stockholder. Also during the marriage the defendant engaged in other entrepreneurial activities including a used car sales operation known as Pat Auto Sales and an extensive coin business and an antique business. During the fifteen year marriage the defendant at times made a significant income, but at other times was unable to do so. During the early years of the marriage the plaintiff assisted the defendant in his various business enterprises and maintained the home for the family. In later years the plaintiff was employed part-time at various activities including a representative of Estee Lauder for about five years. She ran a chocolate business from her home selling chocolate and related items. She was a waitress at a coffee shop and at Howard Johnsons and she was employed by the American Cancer Society as a telephone solicitor on a part-time basis. At times the plaintiff held as many as three jobs at the same time to earn money to support herself after the separation of the parties.
The defendant's coin business which was operated primarily out of their home involved going to weekly shows at some times during the year where the defendant rented display tables and conducted business on a cash basis. The plaintiff offered testimony tending to prove that the business was so elaborate that a large safe was installed in the cellar and the plaintiff's son says that at times he saw the safe to be completely full of collectible coins. The coin collection was so extensive, in fact, that the defendant was required to obtain a Wagoneer Jeep to carry the collection to and from shows and sale activities when an ordinary sedan proved inadequate to the tasks. Neither party offered any records with regard to the proceeds or profits from these activities. The defendant, who the court found to be less than forthright CT Page 7609 with information, suggested in his testimony that all of the coins were now gone. It is noted, however, that his financial affidavit lists $2,000 worth of "miscellaneous collectibles.
While there was testimony which the court credits indicating that the defendant at times during the marriage operated an antique business, no evidence was offered as to the net profits from the business during any particular time period and there was no evidence of a continuation of that business at the present time. No income tax returns were filed with the IRS for the past three years by either party.
The defendant during his direct examination indicated that he is a gambler who has made and lost substantial amounts of money gambling over a long period of time. He claims to have undergone counselling. The plaintiff introduced evidence of difficulties financially arising from the gambling propensities of the defendant. Among other things, the plaintiff claims that at one time the defendant left home in June of 1989 and took considerable cash from their bank accounts and from the Alamo Builders account and went to Atlantic City and lost $3,500.00. The plaintiff complains that subsequent to that time no mortgages were paid and bills began to mount resulting in defaults, law suits and collection notices from lawyers. (See Plaintiff's Exhibits 37, 38 and 39.)
The defendant presented the plaintiff with a BMW automobile as a birthday present.
There were exhibits and testimony relating to a boat which had been owned by the parties. Plaintiff's Exhibit 8, 9 and 10 suggest that a 30 foot Sloop made by Erikson was purchased by the parties for $19,000.00 in August of 1978 shortly after the marriage. A Delaware corporation was organized for that purpose. The parties were the only stockholders of the corporation. (See plaintiff's Exhibit 8.) The plaintiff made several payments on the loan at Connecticut Bank and Trust (plaintiff's Exhibit 9) from an account which she maintained but the court finds no credible evidence as to where the funds came from to go into that account. The boat was listed on the defendant's affidavit on October 28, 1991 as having an $8,000.00 value. At the same time the defendant showed a $3,500.00 debt to Frank Hall Boat Yard where the boat was kept. At the time of the trial the defendant claims to have disposed of the boat for the purpose of paying the boat yard charges and shows no liability to the boat yard. The plaintiff who was a joint owner of the boat (see plaintiff's Exhibit 10) was given no accounting and did CT Page 7610 not participate in the transaction.
The defendant presents a less than credible explanation with regard to his earnings, employability and the amount and sources of his income. He showed on his affidavit in October, 1991 earnings of $100.00 a week as an "insurance salesman". At the trial his affidavit says he is "unemployed" but he admits to being involved in the sale of home improvements, and shows an income of $200.00 per week. Over the course of the marriage, as indicated above, the court finds he has been the sole shareholder and operator of Alamo Builders, Inc. as well as auto sales companies, a coin business, an antique furniture business. No records were shown to quantify these activities, but from the evidence relating to the lifestyle of the parties during the marriage the court concludes that the defendant has a tremendous earning capacity as a salesman in a variety of fields from which to earn income and satisfy his obligations. In this case the orders of the court will be based not only on what the defendant admits to earning but on the evidence with regard to his earning capacity. See Broderick v. Broderick,20 Conn. App. 145, 147 (1989).
The needs of the parties are suggested by their respective affidavits which are a remarkably close, each listing over $280.00 in weekly expenses.
Plaintiff has not provided, as previously ordered by the court, her accounting of the rental of the property at 84 Lincoln Avenue, New London, Connecticut except to list in her financial affidavit provided at the time of trial the weekly gross rental of $450.00 and various expenses which she claims produces a net loss weekly of $5.23 from that property. The defendant acknowledges that the plaintiff provided the down payment for the 84 Lincoln Avenue apartment house. This is a four apartment facility which the plaintiff has managed since its ownership. There is no evidence of any default on the mortgage with regard to that property.
With regard to the 116 Butlertown Road, Waterford property, if the parties still have an interest in the property (and there is conflicting evidence on that subject) the court has concluded that there is no substantial value to the same by reason of the mortgage obligations related to the property. It should be noted that the plaintiff testified that the property had been taken by foreclosure and has indicated the same in her financial affidavit. No other evidence with regard to the transfer of title and/or foreclosure has been offered by either party. CT Page 7611
With regard to the age of the parties, it appears to the court from the appearance of the parties that they are approximately the same age and no differentiation need be made in the court orders on account of the same.
The health of the parties was not the subject of evidence except that the plaintiff has received psychiatric hospitalization in 1989 according to the testimony of her witness Father James King, who reported her condition as that involving confusion and despair over the failure of the marital relationship. No evidence with regard to the defendant's health was offered unless one considers compulsive gambling to be a matter relating to health. Compulsive gambling is specifically excluded from Americans With Disability Act, 42 U.S.C. § 12, 211(b)(2).
The vocational skills and employability of the two parties in this case is adequately reflected by the evidence found above.
The opportunities of each party for the future acquisition of capitol and income is directly related to their abilities, vocational skills and employability as above. The court in this case finds that defendant husband, although less than forthright with the court in his testimony and disclosures, has by far the greater prospect for the future acquisition of capitol and income than does the plaintiff wife. The husband has in the past earned considerable sums and provided the Pearce family with an opportunity to enjoy boating, expensive automobiles, and generally a standard of living which reflects the capacity for considerable earnings. The plaintiff, on the other hand, is required to do more menial types of activities such as waitress and selling cosmetics and telephone solicitations for her income.
The cause of the breakdown of the marriage has been a subject of considerable testimony. The court finds that the defendant's gambling and the financial troubles brought upon the parties by the results of this problem were substantial factors in the breakdown of the marriage. But the court notes this is only one of several factors to be considered and will not be the sole consideration. In addition to the statutory factors which the court will consider in formulating the orders, the court will also consider the appearance, demeanor and attitude of the witnesses and particularly the parties as well as the inter-relationship of the various orders.
Based upon the above analysis, and considering the CT Page 7612 arguments advanced by each party in their proposed orders and claims for relief, the court orders the defendant to pay to the plaintiff as periodic alimony for her support the sum of $100.00 per week for a period of fifteen years or until her earlier death or remarriage. This period should accomplish a complete transition for the plaintiff into her single status and take into account differing vocational skills and employability of the respective parties and the division of assets. The periodic alimony shall not be modifiable as to term and, as indicated above, is based to some extent to the earning capacity of the defendant as reflected in the evidence.
Each party is ordered to be responsible for their own legal fees, if any.
Each party is ordered to be responsible for their own medical/health insurance.
With regard to the assets of the parties, the court orders that the plaintiff shall continue to be the sole owner of the real property located at 155 Reutemann Road, North Stonington, Connecticut which the court values at $240,000.00 and the defendant shall have no claim with regard to the same. The plaintiff shall hold the defendant harmless from any expenses relating to the future maintenance, upkeep, real property taxes or insurance on said premises. Also, the plaintiff shall be the sole owner of all furnishings now in, on or about the said premises and any fixtures, lawn equipment, tools, apparatus used in connection with the maintenance of the same or located on said premises except as specifically provided hereinafter.
The court orders that the defendant shall be the sole owner of the real property at 84 Lincoln Avenue, New London, Connecticut which the court finds has a value of $140,000.00 and is subject to a mortgage in the amount of $122,000.00 and the judgment of the court shall automatically transfer said interest in accordance with the provisions of Section 46b-81 of the Connecticut General Statutes subject to the lien hereafter set forth. The plaintiff is also ordered to deliver to the defendant copies of all existing leases, records, notices, receipts, security deposits held by her and any other documents related to the use, occupancy or rental of said premises all of which shall be accomplished within ten days. The defendant shall pay and be responsible for and hold plaintiff harmless from all mortgage payments, taxes, insurance, security deposits and other charges relating to this property. CT Page 7613
The court orders that the plaintiff shall have no interest in the North Stonington lot shown on the defendant's affidavit which the court finds to have a value of $60,000.00 and the plaintiff is ordered to sign any documentation which may be required to accomplish a transfer of her interest in that lot to him within 30 days.
Each party shall keep and be responsible for the motor vehicle shown on their respective financial affidavits and shall hold the other harmless from any obligations relating to the same past, present or future.
Defendant shall have no claim on the plaintiff's individual IRA accounts as shown on her financial affidavit.
The plaintiff is ordered to transfer to the defendant any interest she has in his carpenter or woodworking tools and contracting tools which may remain on the premises at 155 Reutemann Road, North Stonington, Connecticut which the defendant shall remove within 30 days at a reasonable time convenient to the plaintiff after first providing twenty-four hours advance written notice to the plaintiff. Any tools not removed within that time shall be considered abandoned.
With regard to the debts of the parties it should first be noted that this court cannot and will not effect the responsibility of either party to the creditor. These orders are intended to deal with the relationship between the parties only. Each party shall be responsible for one half of all obligations incurred prior to July 1, 1991 except those secured by mortgage and shall hold the other harmless from any obligations incurred by virtue of the failure to make said payments. This shall include the obligations to the Connecticut National Bank, the taxes of the Town of Stonington, City of New London and the other debts shown on the plaintiff's affidavit, but shall not include obligations secured by mortgage or obligations to Joseph Pearce or Lena Pearce or Alamo Builders, Inc. To secure the hold harmless obligations relating to the payment of these obligations of each party the court makes the obligations of the defendant a lien upon the empty lot in North Stonington and the 84 Lincoln Avenue, New London, Connecticut property and the obligations of the plaintiff a lien upon the property at 155 Reutemann Road, North Stonington, Connecticut and the parties are each ordered to provide notice of this equitable lien on the land records in the towns where the property is located. The court will retain jurisdiction of this matter for the purpose of effectuating the liens should the obligations of the parties to hold each other harmless require the CT Page 7614 enforcement of the same.
Leuba, J.